United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH BLOCK,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO UNIFIED SCHOOL<br>DISTRICT, et al.,<br><br>    Defendants. | Case No. 25-cv-01606-LJC<br><br>**ORDER REGARDING MOTION TO<br>DISMISS FIRST AMENDED<br>COMPLAINT**<br><br>Re: Dkt. No. 11 |

## I.    INTRODUCTION

Plaintiff Kenneth Block, a school security guard, brought this action in state court against Defendants the San Francisco Unified School District (the District) and its employee Michael Essien, a school principal, asserting discrimination, harassment, and related claims. Defendants removed to this Court and move to dismiss and strike portions of Block's operative First Amended Complaint. The Court previously found the matter suitable for resolution without oral argument and took it under submission without a hearing. For the reasons discussed below, Defendants' Motion is GRANTED in part and DENIED in part.[1]

If Block wishes to pursue claims dismissed or allegations stricken by this Order, he may file a second amended complaint no later than January 20, 2026. If Block does not amend, he may proceed only on his claims against the District for retaliation and for harassment based on race, color, or ancestry, as well as his claim for failure to prevent such harassment.

A further case management conference shall occur by videoconference on February 26, 2026 at 1:30 PM. The parties shall file an updated joint case management statement no later than

---

[1] The parties have consented to proceed before a magistrate judge for all purposes under 28 U.S.C. § 636(c).

1    January 19, 2026.

2    **II.    BACKGROUND**

3        **A.    Allegations of the First Amended Complaint**

4        Because a plaintiff's factual allegations are generally taken as true in considering a motion

5    to dismiss under Rule 12(b)(6), this Order summarizes Block's allegations as if true.  Nothing in

6    this Order should be construed as a resolving any question of fact that might be disputed at a later

7    stage of the case.

8        Block was hired in 2007 by the principal of Balboa High School to be an assistant track

9    coach, but the head coach wished to retain his existing staff, and Block instead accepted a position

10   as security guard.  1st Am. Compl. (FAC)[2] ¶ 11.  After learning that students had stolen records

11   from an office on the third floor of the school, Block asked them not to go to that floor during

12   class time, and told them that he would report them if they did so. *Id.* ¶¶ 12–13.  Soon after that, a

13   student wrote a letter accusing Block of making inappropriate offers and sexual comments to her,

14   including "that a Black man's penis is bigger than other men's." *Id.* ¶ 15.  Block denied having

15   done so. *Id.* ¶ 16.  He was placed on administrative leave during an investigation by his supervisor

16   Eric Maggi, but Maggi later informed him that there was insufficient evidence for any finding of

17   wrongdoing. *Id.* ¶¶ 17–19.

18       Block accepted an offer to transfer to Malcolm X Elementary School to avoid contact with

19   the student who accused him of misconduct. *Id.* ¶ 20.  At some point thereafter, a student at

20   Malcolm X Elementary falsely accused Block of stabbing him in the leg with a pencil. *Id.* ¶ 22.

21   The police were called, and it was "determined the injury occurred at home and that [Block] did

22   not cause the injury." *Id.* ¶¶ 23–24 (emphasis omitted).  But the student's mother "arrange[d] for

23   people in the community to attack [Block] at school," and Block took the last month of that school

24   session off work due to stress. *Id.* ¶¶ 25–26 (emphasis omitted).

25       Block was then transferred to work as a security guard at the Civic Center school for

26   students with behavioral problems. *Id.* ¶ 27.  Multiple students there threatened to shoot Block.

27

28   _____
[2] The First Amended Complaint appears in the docket as an attachment to Defendants' Notice of Removal, beginning at page 7 of ECF No. 1.

2

*Id.* One of them was arrested. *Id.*

After that, Block was assigned to Willie Brown Middle School. *Id.* ¶ 29. A mob of parents showed up at the school, upset over a decision by the principal and intending "to physically beat her up." *Id.* ¶¶ 31–32. Block reported the situation to the principal and a regional supervisor. *Id.* ¶ 33. One of the other security guards, identified in the First Amended Complaint only as "Pam," told the mob that Block had reported their presence to the principal. *Id.* ¶ 34. When the principal asked why the other security guards who were present had not reported it, Block said that "they too wanted the principal to be beaten up." *Id.* ¶ 35. Block called the police, who "escorted [Block] to his card to protect him from the mob." *Id.* ¶ 36.

When the principal later asked Block to work at a high school graduation, his colleague Pam cursed at him and complained that she should have been given the assignment, and Block declined it. *Id.* ¶ 37.

Block transferred to Washington High School, where other participants at a "meeting about overtime for security guards" verbally abused him. *Id.* ¶¶ 38–40. The principal failed to stop the abuse, and Block "exit[ed] the hostile environment." *Id.* ¶ 40.

Block was then "transferred to the Bayview Zone," which had no students. *Id.* ¶ 41. A coworker, Jose Hernandez, slept on the job called Block "errand boy." *Id.* ¶¶ 42–43. Block reported Hernandez's sleeping and characterized his comment as racist. *Id.* ¶ 44. Hernandez denied that the comment was racist, got upset, and threw his keys. *Id.* ¶¶ 46–47. Hernandez was not disciplined and was "transferred to an all Black school." *Id.* ¶ 48.

Around 2013, Block transferred to Martin Luther King (MLK) Middle School. *Id.* ¶ 49. A student assaulted him, the school was locked down, and Defendant Michael Essien (the principal there) restrained the student with a wrestling hold. *Id.* ¶¶ 50–52. Essien said to Block, "You're not going to file a worker comp claim because you're a tough guy, right?" *Id.* ¶ 53. Block did not file a claim because he was intimidated. *Id.* ¶ 54. The same student later caused multiple other lockdowns and threatened a mass shooting, and was barred from campus but subsequently allowed to return. *Id.* ¶¶ 55–56.

Another SFUSD employee named Flora, who is Filipina, prepared breakfast for the

United States District Court
Northern District of California

students and yelled at Block for picking up the breakfast carts too early. *Id.* ¶¶ 57–58. Block arranged for sixth-grade students to pick up the carts instead. *Id.* ¶ 59. When the students knocked on the door a few weeks later, Flora yelled to them, "Get those people to unlock the door." *Id.* ¶ 60. According to Block, Flora's use of the term "those people" was a racist reference to Block. *Id.* ¶ 61. Block reported the incident to Essien, but nothing was done. *Id.* ¶¶ 62–63.

A week later, the students who picked up the cart had Flora's phone. *Id.* ¶ 65. Block gave the phone to Essien's secretary. *Id.* ¶ 66. The students later came back crying, and they told Block that Flora hit them and accused them of stealing her phone. *Id.* ¶¶ 67–68. Block reported the incident to a social worker, Ms. Downey, who had the students write statements and provided that information to Assistant Principal Fechter, who is white. *Id.* ¶ 69. According to Block, Fechter was required to report child abuse but failed to do so. *Id.* Block's First Amended Complaint does not specifically allege when this incident took place, but an attachment indicates that it occurred in October of 2019. *Id.* Ex 2 (ECF No. 1 at 45).

Around an hour later, Downey told Block that Flora was reporting to Fechter that Block said inappropriate things to Flora. *Id.* ¶ 70. Fechter told Block about those accusations days later, and Block told Fechter that he had not spoken to Flora in years. *Id.* ¶¶ 71–72. Fechter opened a Human Resources (HR) investigation into Block's alleged comments, but no investigation was conducted into Flora hitting students. *Id.* ¶ 74.

The investigation, conducted by head of HR Stephanie Bealby (who is white), took around three months. *Id.* ¶¶ 75–76. Bealby concluded, falsely, that Block probably said inappropriate things to Flora, and told Block that if there was any future failure to investigate Flora hitting students, Block should come to HR. *Id.* ¶¶ 77–78.

Flora "continue[d] to harass" Block, and Block reported that harassment to Fechter and Essien. *Id.* ¶¶ 79–80. Fechter said he would tell Flora to be more professional, but "Essien [did] nothing and sa[id] as long she doesn't say anything to him, it's ok." *Id.* ¶ 82. When Flora saw Block, she "start[ed] throwing carts." *Id.* ¶ 83.

At a career day organized by China Morgan, Morgan asked Block to open the bathroom doors. *Id.* ¶¶ 84–85. Apparently in response to him doing so, Flora told Block that he did not

belong there and needed to leave, and told Morgan to make Block leave. *Id.* ¶ 86. "She may have said the N-word." *Id.* Block gave the keys to Morgan and stepped away. *Id.* ¶ 87. Morgan wrote a letter to Essien[3] reporting Flora's misconduct, and later met with Essien, but Block heard nothing further about the incident. *Id.* ¶¶ 88–89.[4]

Block alleges that he was harassed by multiple students, who called him "the N-word," in addition to various insults that were not explicitly based on race. *Id.* ¶¶ 90–91, 99–100. When Block arranged a meeting with Essien and a student named Asoni Cooks, Cooks told Essien, "I don't like that old ass mother fucker." *Id.* ¶ 94. Essien told Block to change his behavior and ask Cooks for a hall pass in the future as the student requested, even though Cooks was entering classrooms for another grade and slapping other students. *Id.* ¶¶ 96–97. According to Block, Cooks was "directed to stay at home because it isn't safe for him, the staff, or other students, because older kids had come to the school looking to kill him." *Id.* ¶ 98.

When Block met with another problematic student and Fechter, the student "repeat[ed] the abusive words," causing Block to cry during the meeting. *Id.* ¶¶ 101–02. Fechter responded, "Why are you crying? These are Black kids calling you the N-word." *Id.* ¶ 103. In Block's view, that response suggested that Fechter believed the term was acceptable. *Id.*

Block complained to HR, and investigator Jelani Hironaka determined after an investigation that Block had experienced retaliation and a lack of sufficient support from Essien. *Id.* ¶¶ 105–07. Hironaka said that a superintendent would be meeting with Block and Essien. *Id.* ¶ 107. Essien retaliated by placing Block on administrative leave. *Id.* ¶ 108. The meeting with the superintendent never occurred. *Id.* Hironaka was later "removed from certain investigations, apparently for refusing to find for SFUSD." *Id.*

During the COVID-19 pandemic, someone in HR emailed Block offering him a leave of absence because Fechter had reported Block being late to work. *Id.* ¶ 110. Block rejected that

---

3 The First Amended Complaint here erroneously refers to Mr. Essien as "Ms. Essien" and "Ms. Essen." FAC ¶¶ 88–89.
4 The First Amended Complaint does not indicate when this occurred. Morgan's letter attached thereto indicates that it occurred on February 18, 2022. ECF No. 1 at 52. It is not clear whether the allegations of the First Amended Complaint are presented in chronological order. *Cf.* FAC ¶ 109 (later discussing a work assignment "[d]uring COVID").

United States District Court
Northern District of California

offer and told HR that he was not late. *Id.* ¶¶ 111. Fechter then told HR that Block did not have a work assignment, which was also false. *Id.* ¶¶ 109, 112.

Block later contacted April Scott, "the acting principal for MLK High School" (sic[5]), who arranged a meeting with several stakeholders. *Id.* ¶¶ 113–14. Essien admitted at that meeting that Block had not been treated right, and Fechter said that his false statement about Block not having an assignment was the result of Fechter "having a bad day." *Id.* ¶¶ 115–16. Fechter was not disciplined. *Id.* ¶ 117.

Another student later yelled at Block, "You N-word ass bitch," which Block reported to Essien. *Id.* ¶ 119. Block was later involved in breaking up a fight at the school involving a student named Urolee, after which a social worker, Ms. Gauthier,[6] was left in tears. *Id.* ¶¶ 120–21. Block was "thrown three times" during the fight. *Id.* ¶ 120. In Block's view, the school did not take restorative justice measures after the fight. *Id.* ¶ 122.

In October of 2022, Block was called to a meeting with Essien, Fechter, and Whittington Jackson, a union steward. *Id.* ¶¶ 123–24. Essien said that two students reported that Block had "said awful things about" Gauthier, causing division among the staff, and that Gauthier came to Essien in tears over what the students had said Block said. *Id.* ¶¶ 126, 128–29. Block denied making such statements. *Id.* ¶ 127. Essien made a derisive comment about needing a union representative when meeting with Block, and noted Block's previous complaint about students calling him a racial slur. *Id.* ¶¶ 130–31. Essien acknowledged that he had instructed Block to take up that previous complaint with a teacher and to let the teacher handle it. *Id.* ¶ 132. Essien characterized as accurate the reports that Block made inappropriate statements about Gauthier. *Id.* ¶ 133. Essien also said that Block's purported abuse of Gauthier, as well as his previous complaints regarding racial slurs, "cause 'division amongst the staff.'" *Id.*

---

[5] The First Amended Complaint elsewhere refers to MLK as a middle school. FAC ¶ 49.
[6] Block's First Amended Complaint indicates that he is not sure of the spelling of some names, including Gauthier's, which the First Amended Complaint spells as "Goteay" or "Goteay." *See* FAC ¶ 121. This Order spells that name as it appears in attachments to the First Amended Complaint, *see* ECF No. 1 at 47–48, 50–51, and as Defendants assert is accurate in their Motion, ECF No. 11 at 11 n.5. This Order otherwise spells names as they appear in the First Amended Complaint, recognizing that some spellings may not be accurate.

United States District Court
Northern District of California

After that meeting, Block requested a meeting with Gauthier, who said that she had no complaints about Block, and instead had a great relationship with him and felt sorry for him.  She said that she had been crying because the students had cursed at her.  *Id.* ¶¶ 134–37.

Later—the First Amended Complaint does not specify when, but a government claim attached to it indicates a few days after the meeting with Essien, ECF No. 1 at 47—Block was called to Fechter's office, and Superintendent Han Phung joined by videoconference.  FAC ¶¶ 138–39.  Phung instructed Fechter to take Block's keys and escort him off campus.  *Id.* ¶ 140.  Phung told Block that he was "being removed for gross misconduct for something that happened in 2007 at Balboa High School."  *Id.* ¶ 141. She said that he must "stay two blocks away from MLK, and if he fails to, he will be terminated."  *Id.* ¶ 140.  Block was escorted off campus in tears, in view of students and staff, which humiliated him.  *Id.* ¶ 143.  He was not allowed to take his personal property, which was later stolen.  *Id.* ¶ 142.

Two representatives of the District, a Ms. Kelly and a Mr. Quinn (the latter being an attorney), interviewed Block "[d]uring the time [he was] off."  *Id.* ¶ 144.  Quinn told Block that he was a liar, and said that he would be fired if he did not resign.  *Id.* ¶ 145.  A union representative (William Happy) and a union attorney also attended the meeting, which was recorded.  *Id.* ¶ 146.  Happy told Block that Quinn was trying to intimidate him into quitting.  *Id.* ¶ 147.

In January of 2023, "Superintendent Phung interview[ed] Kenneth [Block] and ask[ed] for witness statements regarding [his] complaint about Mr. Essien's retaliation, harassment, and discrimination in the prior group meeting regarding Ms. [Gauthier]."  *Id.* ¶ 148.

Stephanie Bealby, the HR officer who previously investigated Block's dispute with Flora, sent Block a letter in April of 2024 stating that the allegations of misconduct with a student in 2007 were accurate and supported by new evidence.  *Id.* ¶ 149.  In September of 2024, union representative Happy sent the following email:

> This message is intended for Kenneth Block. I am confirming that during the investigation into Mr. Block during the 22-23 school year did not question [sic] Mr. Block or find any new evidence that had not already been addressed and litigated. Thank you.

> William Happy

*Id.* ¶ 150.  Block alleges that "Defendant lost some of the prior records and there is no new evidence."  *Id.* (emphasis omitted).

Block submitted two claims to the District in 2024, and asserts that the District failed to respond within the time allowed.  *Id.* ¶ 154.  He attaches the District's response letter, which is dated September 12, 2024 and states that the District considered his claims untimely, or to the extent that they might be timely, denied them.  ECF No. 1 at 61–62.  Block received right-to-sue letters from the California Civil Rights Department and the U.S. Department of Justice.  FAC ¶ 154 & Exs. 1, 3.

The First Amended Complaint does not address any employment action that the District took after Bealby's April 2024 letter.  Block's June 13, 2024 government claim letter attached to the First Amended Complaint indicates that Bealby instructed him to return to work.  ECF No. 1 at 49.

Block's First Amended Complaint asserts the following claims: (1) discrimination based on sex, age, race, color, and/or ancestry in violation of section 12940(a) of the California Government Code, a provision of the Fair Employment and Housing Act (FEHA), FAC ¶¶ 155–59; (2) harassment on account of the same protected classes in violation of section 12940(j) of the Government Code, FAC ¶¶ 160–67; (3) retaliation in violation of section 12940(h) of the Government Code, FAC ¶¶ 168–73; (4) failure to prevent discrimination, harassment, or retaliation in violation of section 12940(k) of the Government Code, FAC ¶¶ 174–79; (5) infringement of Block's Fourteenth Amendment rights to equal protection and due process of law, as well as statutory rights under Title VII of the Civil Rights Act of 1964, in violation of 42 U.S.C. § 1983, FAC ¶¶ 180–87; (6) defamation, FAC ¶¶ 188–94; (7) self-publication, FAC ¶¶ 195–201; (8) discrimination and harassment on account of race and sex in violation of Title VII, FAC ¶¶ 202–08; and (9) retaliation in violation of Title VII, FAC ¶¶ 209–12.

Block's fifth claim, under § 1983, is asserted against Essien.  ECF No. 1 at 25 (heading).  The rest are less clear: claims one through four, six, and seven are asserted against "Defendant," and claims eight and nine are asserted against "Caltrans," apparently in error.  *Id.* at 22–29 (headings).  The Court presumes that Block intended to assert all claims except for his § 1983

claim against the District.  *See* ECF No. 11 at 7 n.1 (Defendants' Motion, noting that Block's counsel clarified that he intended to assert Title VII claims against the District).

Block's prayer for relief includes, among other things, punitive damages and injunctive relief.  *Id.* at 29–30.

### B.    The Parties' Arguments

#### 1.    Defendants' Motion

Defendants argue that Block has not sufficiently alleged a Title VII claim because he does not allege that he timely filed a discrimination charge with the Equal Employment Opportunity Commissioner (EEOC).  ECF No. 11 at 13.  Defendants further argue that Block's Title VII and FEHA discrimination claims lack factual allegations that Defendants were motivated by his membership in any protected class.  *Id.* at 14–15.  They also dispute whether many of the incidents of purported mistreatment alleged in the First Amended Complaint constitute adverse employment actions on which Block can base a discrimination claim.  *Id.* at 14–16.

Defendants move to dismiss Block's harassment claims to the extent they are based on age and sex.  *Id.* at 16.  They do not address his harassment claims based on the other protected classes he invokes (race, color, and ancestry).  *See id.*; *cf.* FAC ¶¶ 161, 207.

Defendants contend that Block's defamation and self-publication claims should be dismissed for failure to identify a statutory basis to sue a governmental entity under California law.  ECF No. 11 at 17.  Defendants argue that those claims are also untimely as to some of the alleged statements at issue.  *Id.* at 18.  The only statements Defendants identify as falling within the limitations period is Bealby's alleged 2024 written notice that Block engaged in misconduct in 2007.  *Id.* at 19.  Defendants argue that Block has not alleged the contents of that statement with the requisite specificity, and that her statements in the context of an internal investigation are protected by both absolute privilege (as part of an official proceeding) and qualified common interest privilege.  *Id.*

With respect to the self-publication claim, Defendants contend that Block has not alleged that he actually repeated any defamatory statement, much less that he was unduly pressured to do so.  *Id.*

Defendants argue that Essien is entitled to qualified immunity on Block's claim under § 1983, and that Block's "extremely vague" allegations regarding Essien's conduct do not show that he violated any clearly established law. *Id.* at 20–21. To the extent Block asserts a due process violation, Defendants argue that Block has not sufficiently alleged any infringement of a liberty or property interest, or that any such infringement lacked due process. *Id.* at 22. To the extent Block asserts an equal protection violation, Defendants contend that he fails to allege that similarly situated employees were treated differently. *Id.* at 22–23. And to the extent Block asserts a claim under § 1983 for violations of Title VII, Defendants argue that Block has not alleged any personal conduct by Essien that could support such a claim. *Id.* at 23.

Defendants move to strike "Paragraphs 21-27, 29-37, 38-40, 41-48 concern[ing] Plaintiff's time at Malcolm X Elementary, Willie Brown Middle School, Washington High School and Bayview Zone"[7] as outside any applicable statute of limitations and unrelated to claims that might arise from more recent alleged conduct. *Id.* at 24–26. They do not seek to strike Block's allegations regarding his experience in 2007 at Balboa High School, recognizing that "they relate to the renewed student complaint for which [Block] alleges he was placed on administrative leave in 2022." *Id.* at 25 n.6. They also move to strike paragraphs 98 and 120 through 122, concerning students Asoni Cooks and Urolee, as unrelated to Block's claims. *Id.* at 26

Defendants move to strike Block's prayer for punitive damages as unavailable against the District and unsupported against Essien. *Id.* at 26–27. Defendants move to strike Block's prayer for injunctive relief as overly vague, an improper intrusion into state authority, and unavailable where Block has not shown that money damages would be insufficient to redress any injury. *Id.* at 27–28.

### 2.    Block's Opposition Brief

Block's opposition brief consists largely of extensive block quotes from practice guides,[8]

---

[7] The First Amended Complaint does not include a paragraph 28, so Defendants effectively seek to strike paragraphs 21 through 48.

[8] Defendants assert that some of Block's block quotes "span as long as five consecutive pages." ECF No. 18 at 5. That is not quite accurate. The longest uninterrupted block quote is four pages long. ECF No. 14 at 13–16.

United States District Court
Northern District of California

with minimal analysis tying those points of law to the allegations and arguments in this case.  *See generally* ECF No. 14.  It includes a number of errors of spelling, punctuation, and grammar. Block is represented by counsel.  Neither the opposition brief nor the First Amended Complaint (which has many of the same deficiencies) meets the standards that this Court expects from a licensed attorney.

Block contends that the First Amended Complaint and its attachments show that his administrative charge was dual-filed with both the California Civil Right Department and the EEOC.  *Id.* at 11–12.

For his discrimination claims, Block argues:

> When we consider the entirety of the complaint, general allegations, and allegations in the EEOC cause of action [sic], we see ample facts showing adverse employment actions, including, placed on administrative leave, creating objectively intolerable working conditions, badgering, harassing, and humiliating Kenneth [Block] to quit, failing to protect him from racial discrimination and harassment, an admission by Essien that Kenneth had been mistreated, Mr. Fechter admitting lying about Kenneth, Kenneth repeatedly subjected to the **N-word** and suggested he should accept it, told to be a tough "guy"—no work comp, referred to as an **"errand boy"**, subjected to bogus investigations and findings, and falsely accused for sexual misconduct in 2007—and then told there was new evidence, when there was not.

*Id.* at 17.  He asserts that the First Amended Complaint "provide[s] ample direct and circumstantial evidence that race, sex, age, color and ancestry were substantial factors in adverse employment actions."  *Id.* at 18.  According to Block, "facts and arguments supporting the EECC [sic] discrimination claim support the FEHA claim as well."  *Id.* at 19.  Block does not address Defendants' arguments regarding the statute of limitations.

With respect to his harassment claims, Block contends that the "chronological flow of the complaint" demonstrates that "Defendants failed to prevent the harassment and allowed it to grow and fester."  *Id.* at 21.  He specifically notes:

> that he was called an "errand boy," called one of "those people," he didn't "belong there," "Whenever we meet we [sic] Mr. Block we gotta have a union rep," Essien's false statement that Kenneth verbally abused Ms. Goteay [sic], and in April, 2024, Kenneth received a letter that falsely stated there was new evidence to support wrongdoing in 2027 [sic].

11

1   ECF No. 14 at 23.

2       For his claim under § 1983, Block begins—for reasons that are not clear—with a lengthy

3   block quote from a practice guide explaining that the statute generally does not apply to private,

4   non-governmental employers.  *Id.* at 23.  He then argues that Essien is not entitled to qualified

5   immunity because the District's own investigation by Jelani Hironaka found that Block had been

6   retaliated against and not properly supported, and because "Essien admitted Kenneth was not

7   being treated right" and that Essien had "failed to personally address Kenneth's complaint about

8   being called the N-word and delegated the matter merely to a teacher."  *Id.* at 24.  According to

9   Block, he sufficiently alleges a "deprivation of property" based on having been placed on

10  administrative leave, and a deprivation of liberty based on the instruction to stay away from the

11  school.  *Id.*

12      In response to Defendants' Motion to Strike, Block contends that past conduct is relevant

13  to a continuing violation theory for his FEHA claims and his Title VII harassment claim.  *Id.* at

14  24–25.  He concedes that SFUSD cannot be held liable for punitive damages, but argues that he

15  sufficiently alleges "malice, oppression, and/or fraud to support punitive damages under Civil

16  Code section 3294" against Essien.  *Id.* at 26.  Block also argues that the Court should not strike

17  his prayer for injunctive relief because the statutes on which he bases his claims allow for such

18  relief.  *Id.* at 26–27.

19              **3.      Defendants' Reply**

20      Defendants acknowledge in their Reply that Block filed an administrative charge with the

21  EEOC, but argue that his Title VII claims should nevertheless be dismissed because he does not

22  allege *when* he filed that charge.  ECF No. 18 at 5–6.

23      As in their Motion, Defendants contends that Block has not sufficiently alleged either any

24  cognizable adverse employment action or a connection between such an action and any protected

25  class, both of which are necessary for his discrimination claims under Title VII and FEHA.  *Id.* at

26  5–7.  Defendants acknowledge that the District placing Block on administrative leave in 2022

27  "could possibly be considered an adverse employment action," but argue that Block has not

28  offered allegations to suggest that Superintendent Han Phung was motivated by Block's race, age,

United States District Court
Northern District of California

sex, color, or ancestry, or that any employee outside of those protected classes was treated differently. *Id.* at 6–7.

Defendants again argue that Block's claims for harassment based on age or sex are insufficient. *Id.* at 7–8. They acknowledge allegations that students called Block an "old ass man" and "old ass motherfucker," but argue that Block's allegations do not suggest that the District responded unreasonably to those incidents. *Id.* Once again, Defendants do not address Block's claims for harassment to the extent that they are based on race, color, or ancestry. *See id.*

Defendants contend that Block's opposition brief does not meaningfully defend the sufficiency or timeliness of his defamation and self-publication claims, instead primarily seeking leave to amend. *Id.* at 9–10. Defendants argue that Block has not identified how he could amend those claims to salvage them, particularly with respect to the applicable statute of limitations. *Id.*

Defendants reiterate their previous arguments with respect to Block's claim under § 1983, arguing that Block alleges neither the necessary elements of a constitutional or statutory violation, nor personal involvement by Essien in any such deprivation of Block's rights. *Id.* at 10–12.

With respect to their Motion to Strike, Defendants argue that Block has not alleged a sufficient connection between the various incidents recited in the First Amended Complaint to establish a continuing violation. *Id.* at 12–13. Defendants also argue again that Block has not alleged sufficiently wrongful conduct by Essien to support punitive damages, and that injunctive relief would not be appropriate based on Block's allegations. *Id.* at 13–15.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted). A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor*

United States District Court
Northern District of California

1    *Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  "Threadbare recitals

2    of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal

3    conclusions" or "mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

4    (2009).  The allegations in the complaint "must be enough to raise a right to relief above the

5    speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must

6    demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the

7    reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

8    678.

9    　A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint,

10   with the exception of materials incorporated by reference in a complaint or materials subject to

11   judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

12   A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is

13   clear the complaint cannot be saved by any amendment.  *See United States v. Corinthian Colleges*,

14   655 F.3d 984, 995 (9th Cir. 2011).  "[L]eave to amend should be freely granted 'when justice so

15   requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Fed. R. Civ. P. 15(a)).

16   Generally, leave to amend may be denied only if allowing the amendment would unduly prejudice

17   the defendant, cause undue delay, or be futile, or if the plaintiff has acted in bad faith.  *Leadsinger,*

18   *Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

19   **B.    Motion to Strike**

20   　"The court may strike from a pleading an insufficient defense or any redundant,

21   immaterial, impertinent, or scandalous matter" Under Rule 12(f) of the Federal Rules of Civil

22   Procedure.  Fed. R. Civ. P. 12(f).  "Motions to strike are generally regarded with disfavor because

23   of the limited importance of pleading in federal practice, and because they are often used as a

24   delaying tactic."  *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal.

25   2008); *see also Pollock v. Fed. Ins. Co.*, No. 21-cv-09975-JCS, 2022 WL 912893, at *5 (N.D. Cal.

26   Mar. 29, 2022).  The purpose of Rule 12(f) is "to avoid the expenditure of time and money that

27   must arise from litigating spurious issues by dispensing with those issues prior to trial."

28   *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  "Ultimately, whether to

United States District Court
Northern District of California

1  grant a motion to strike lies within the sound discretion of the district court." *Nguyen v. CTS Elecs.*

2  *Mfg. Sols. Inc.*, No. 13-cv-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing

3  *Whittlestone*, 618 F.3d at 973).

4  ## IV.    ANALYSIS

5       The Court's analysis addresses Block's claims in the same order as the parties' briefing,

6  which is not the same order they appear in Block's First Amended Complaint.  The Court begins

7  with Block's discrimination claims under Title. VII.

8       ### A.    Title VII Claims

9       Block's eighth and ninth claims assert discrimination and retaliation (respectively) in

10  violation of Title VII.  FAC ¶¶ 202–12.  Title VII provides that it is unlawful "to discriminate

11  against any individual with respect to his compensation, terms, conditions, or privileges of

12  employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.

13  § 2000e-2(a)(1).  Title VII also prohibits retaliation for opposing discrimination or for

14  participating in Title VII proceedings. *Id.* § 2000e-3(a).

15       #### 1.    Timeliness

16       Title VII requires a plaintiff to file an administrative charge no later than 180 days after an

17  alleged unlawful employment practice, except that where (as here) a plaintiff also pursues relief

18  through a state or local agency, that deadline is extended to 300 days.  42 U.S.C. § 2000e-5(e)(1).

19  Defendants move to dismiss Block's Title VII claims as untimely because Block did not

20  specifically allege when he filed an administrative charge.  ECF No. 11 at 13.

21       Block asserts in his opposition brief that he timely filed his administrative claim with the

22  EEOC because the same EEOC case number appears on communications from both the California

23  Civil Rights Division and the EEOC, thus indicating that the administrative complaint was cross-

24  filed with both agencies.  ECF No. 14 at 11–12.  Somewhat strangely for an argument about

25  timeliness, Block fails to address *when* he filed that administrative claim.  An exhibit to Block's

26  First Amended Complaint, however, indicates that he filed his administrative complaint with the

27  California Civil Rights Department on March 31, 2023.  ECF No. 1 at 34–35.  Drawing reasonable

28  inferences in Block's favor, the Court infers for the purpose of the present Motion that Block's

administrative complaint was cross-filed with the EEOC the same day. *See Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir. 1999) (holding that, pursuant to commonly used worksharing agreements between state agencies and the EEOC, "a charge filed with the state agency before the 300-day filing deadline expires is deemed automatically filed with the EEOC on that same day").

The administrative complaint was therefore timely as to Title VII claims arising no earlier than June 4, 2022, three hundred days before Block filed his administrative charge.[9]  The earlier incident that Block alleges occurred within that time period is his October 2022 meeting with Essien regarding students' allegedly false reports that Block said "awful things" about Gauthier, *see* FAC ¶ 123–33, followed by the meeting where Phung placed Block on administrative leave for purported misconduct in 2007, *id.* ¶¶ 138–41.

### 2.    Title VII Discrimination Claim

At summary judgment, a plaintiff alleging disparate treatment must establish a prima facie case of discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  That standard generally requires the plaintiff to show that he is a member of a protected class, that he was qualified for his position or performing it adequately, that he was subjected to an "adverse employment action," and that other similarly situated employees outside his protected class were treated more favorably—though the precise avenues available for plaintiffs to meet their burden vary depending on circumstances.  *See Lui v. DeJoy*, 129 F.4th 770, 777 (9th Cir. 2025).

The *McDonnell Douglas* framework does not, however, apply at the pleading stage. *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th Cir. 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  Instead, a plaintiff simply "must include 'sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination.'"  *Williams v. Wolf*, No. 19-cv-

---

[9] As Defendants acknowledge elsewhere in their Motion, ECF No. 11 at 25, FEHA has a longer three-year statute of limitations to submit an administrative charge to the state Civil Rights Department.  Cal. Gov't Code § 12960(e)(5); *see, e.g.*, *Lacy v. Elevance Health Cos., Inc.*, No. 2:22-cv-07841-FLA (ASx), 2024 WL 2106726, at *4 (C.D. Cal. Feb. 1, 2024).

1   00652-JCS, 2020 WL 1245369, at *9 (N.D. Cal. Mar. 16, 2020) (quoting *Austin*, 925 F.3d at

2   1138).

3          To be cognizable as an adverse employment action, the action in question must have

4   "brought about some 'disadvantageous' change in an employment term or condition," or with

5   respect to compensation or privileges of employment. *See Muldrow v. City of St. Louis*, 601 U.S.

6   346, 354 (2024) (citation omitted).  A plaintiff need not show "that the harm incurred was

7   'significant[,]' . . . [o]r serious, or substantial, or any similar adjective suggesting that the

8   disadvantage to the employee must exceed a heightened bar." *Id.* at 355.

9          In his opposition brief, Block lists the following purported adverse actions:

> placed on administrative leave, creating objectively intolerable
> working conditions, badgering, harassing, and humiliating Kenneth
> [Block] to quit, failing to protect him from racial discrimination and
> harassment, an admission by Essien that Kenneth had been
> mistreated, Mr. Fechter admitting lying about Kenneth, Kenneth
> repeatedly subjected to the **N-word** and suggested he should accept
> it, told to be a tough "guy"—no work comp, referred to as an **"errand
> boy"**, subjected to bogus investigations and findings, and falsely
> accused for sexual misconduct in 2007—and then told there was new
> evidence, when there was not.

ECF No. 14 at 17.

16         Many of those incidents fall outside the 300-day limitations period.  Most of them are also

17  the type of conduct that might contribute to a theory of harassment or a hostile work environment.

18  A hostile work environment so intolerable that it effectively alters the terms and conditions of a

19  plaintiff's employment is also actionable as "discrimination" under Title VII,[10] but courts and

20  litigants typically address those theories separately.  *See id.* (citing *Nat'l R.R. Passenger Corp. v.*

21  *Morgan*, 536 U.S. 101, 105 (2002), which addresses how the statute of limitations applies

22  differently to those two theories).  This Order follows that practice, addressing Block's harassment

23  theory separately below.[11]

---

[10] This differs from FEHA, where harassment is broken out in a different statutory provision from discrimination.  *See* Cal. Gov't Code § 12940(a), (j).

[11] Harassment and other mistreatment can also effectively lead to an adverse employment action under a theory of constructive discharge, when an employee resigns due to intolerable working conditions, as some of Block's quotations from practice guides note.  *See, e.g.*, ECF No. 14 at 13–14.  But Block does not allege that he resigned or otherwise ceased working for the District, so that theory is not applicable here.

United States District Court
Northern District of California

United States District Court
Northern District of California

Setting aside the harassment theory for the moment, the only discrete adverse employment action that Block alleges within the 300-day limitations period is having been placed on administrative leave in October 2022. Unlike a theory of harassment, a theory of discrimination under Title VII does not permit a plaintiff to rely on the "continuing violation" doctrine to include related conduct predating the statute of limitations. *See Morgan*, 536 U.S. at 114–15, 122.

As Defendants correctly argue, Block has not offered "sufficient, nonconclusory allegations plausibly linking [the October 2022 adverse] action to discrimination.'" *See Austin*, 925 F.3d at 1138. Block does not specifically allege that Phung, who placed him on leave, was motivated by his race or sex—the protected classes he invokes in his Title VII discrimination claim, FAC ¶ 207. Nor does he allege facts to support such a conclusion, like that other similarly situated employees who were not Black or male were treated better under similar circumstances.

In an argument addressed to his § 1983 claim, Block asserts that the claim is supported by his allegation that "Flora's *physical abuse of children* was ignored while complaints against Kenneth [were] given strict scrutiny." ECF No. 14 at 24. While the allegation that Flora (who is female and Filipina) hit students (FAC ¶ 68) is serious, it implicates different conduct from the allegation that Block made inappropriate sexual comments and offers to a student (FAC ¶ 15). Moreover, as far as the Court can discern from Block's allegations (which are not always clear as to time), the purported incidents appear to have occurred years apart, at different schools, with different supervisory personal reviewing the complaints. Block alleges that the accusations against him occurred at Balboa High School in 2007, that Erica Maggi and Principal Patricia Gray initially conducted an investigation, and that Superintendent Phung and other personnel later following up in 2022. FAC ¶¶ 14–19. In contrast, Block alleges that students reported Flora hit them at MLK Middle School in 2019, and that Vice Principal Fechter failed to investigate. FAC Ex. 2 (ECF No. 1 at 45). Though Block's video call with Phung occurred in Fechter's office, FAC ¶ 138, there is no allegation that Fechter played any role in investigating Block's purported misconduct or in the decision to place him on leave. Taking the allegations of Block's First Amended Complaint as a whole, Fechter's alleged failure to investigate reports that Flora hit students in 2019 does not support a plausible inference that Block was placed on leave in 2022

18

1    (for purported sexual comments in 2007) because he is Black or male.

2          Accordingly, to the extent that Block's Title VII discrimination claim is based on a theory

3    of discrete adverse employment action rather than a hostile work environment, it is DISMISSED

4    for failure to allege sufficiently that Block was subjected to any adverse employment action on

5    account of his race or sex.  It is at least possible that Block may be able to cure that defect through

6    amendment.  The Court therefore grants Block leave to amend this theory.

### 3.    Title VII Harassment Theory

8          As noted above, a plaintiff may bring a Title VII discrimination claim "[w]hen the

9    workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

10   severe or pervasive to alter the conditions of the victim's employment and create an abusive

11   working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  "[C]onsideration of

12   the entire scope of a hostile work environment claim, including behavior alleged outside the

13   statutory time period, is permissible for the purposes of assessing liability, so long as an act

14   contributing to that hostile environment takes place within the statutory time period." *Morgan*,

15   536 U.S. at 105.

16         The Ninth Circuit has held that an educational employer may be held liable for harassment

17   of its employees by students, but only if the employer failed to take appropriate corrective action

18   in response:

19                 [Plaintiff] Campbell did also submit several referrals for offensive
20                 comments that were, by their very terms, based on Campbell's race
                   or sex, some of which were severe. But the students were not
21                 Campbell's employers. Thus, even if comments like the students' are
                   sufficient to create a hostile work environment, [Defendant] the DOE
22                 may be held liable for the students' harassing conduct only to the
                   extent that it failed reasonably to respond to the conduct or to the
23                 extent that it ratified or acquiesced in it. That is, the DOE may be held
                   to account for the students' actions only if, after learning of the
24                 harassment, it failed to take prompt corrective measures that were
                   "reasonably calculated to end the harassment."

25   *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1017 (9th Cir. 2018) (citations omitted).

26         Defendants' Motion and Reply do not address Block's harassment claims to the extent they

27   are based on race, color, or ancestry.  The Court therefore concludes that Defendants have not

28   moved to dismiss those theories and declines to dismiss them.  The Court notes that Block alleges

at least one reference by Essien within the limitations period to students calling Block a racial slur, FAC ¶¶ 131–32, and that Block also alleges earlier incidents where students used that slur and Block did not believe the District responded appropriately, *e.g.*, *id.* ¶¶ 92, 100–03. In the absence of any argument why Block's race-based harassment claim should be dismissed, the Court need not and does not resolve whether Block's allegations on that subject are sufficient to state a claim.

To the extent Block's Title VII harassment theory is based on sex, however, the Court agrees with Defendants that his allegations are insufficient. First, Block includes no allegations of comments that in any way implicated his sex within the 300-day limitations period before he filed his administrative charge, nor does he allege that non-male employees were treated better than he was during that time. That alone is grounds for dismissal. The continuing violation doctrine allows a plaintiff to rely in part on conduct predating the limitations period if the overall course of conduct continued into the limitations period. It does not abolish the limitations period altogether where a plaintiff fails to include any allegations that he was harassed on account of a protected class within that period.

Even if the Court were to look beyond the limitations period, Block's allegations of gendered comments do not on their face reflect hostility based on gender. Block alleges that a male coworker called him an "errand boy" sometime before 2013, FAC ¶ 43, and that Essien called him a "tough guy" when he pressured Block not to file a workers' compensation claim, *id.* ¶ 53. Those allegations potentially reflect mistreatment, but do not on their face reflect hostility based on gender. These comments do not resemble the use of "perhaps the most offensive and inflammatory racial slur in English," on which Block bases (at least in part) his racial harassment claims. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004) (citation omitted).[12]

Block's Title VII claim is therefore DISMISSED with leave to amend to the extent that it

---

[12] The Court recognizes that this term can sometimes carry different connotations when used by and among people who are Black. *See* FAC ¶ 103 (alleging Fechter's dismissive attitude towards Block's complaints because the term was used by Black students). But as discussed above, Defendants have not moved to dismiss Block's harassment claims to the extent they are based on race. The Court need not and does not reach any conclusion as to how the race of the students might affect Block's claim.

United States District Court
Northern District of California

rests on a theory of sex-based harassment, but may proceed to the extent it rests on a theory of race-based harassment.

### 4.    Title VII Retaliation Claim

Title VII's anti-retaliation provision prohibits "discriminat[ion] against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). That statute encompasses retaliatory conduct that is "serious enough to 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Muldrow*, 601 U.S. at 348 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Defendants' briefs do not mention Block's retaliation claims, which Block asserts only against the District. Defendants' only arguments regarding retaliation are in the context of Block's § 1983 claim against Essien, where Defendants contend that Block has not sufficiently alleged Essien's personal involvement in any retaliatory conduct. ECF No. 11 at 21, 23; ECF No. 18 at 10–11. Defendants thus have not moved to dismiss Block's Title VII retaliation claim against the District, which may proceed.

### B.    FEHA Claims

Block assert claims for discrimination, harassment, retaliation, and failure to prevent discrimination, harassment, or retaliation under California's FEHA statute. FAC ¶¶ 155–79 (citing Cal. Gov't Code § 12940(a), (h), (j), (k)). FEHA imposes a substantially similar standard to Title VII for claims against employers. Both state and federal "courts look to pertinent federal precedent" interpreting Title VII when considering claims under FEHA. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000); *see also Rodriguez v. Airborne Express*, 265 F.3d 890, 896 n.4 (9th Cir. 2001). Such claims often rise or fall together.

Block's brief includes a quotation from a practice guide asserting that "FEHA is broader than Title VII" in that it "specifically prohibits 'harassment' (and retaliation) as well as 'discrimination.'" ECF No. 14 at 20. But as discussed above, Title VII also explicitly prohibits retaliation and implicitly prohibits harassment. Neither party here has argued or offered authority

1    that the standards for those claims under the two statutes are materially different.

2        FEHA is broader than Title VII in at least two respects.  First it provides a three-year rather

3    than 300-day statute of limitations to file an administrative charge with the state Civil Rights

4    Department.  Cal. Gov't Code § 12960(e)(5); *see, e.g.*, *Lacy v. Elevance Health Cos., Inc.*, No.

5    2:22-cv-07841-FLA (ASx), 2024 WL 2106726, at *4 (C.D. Cal. Feb. 1, 2024).  Second, it protects

6    a broader range of classes, prohibiting discrimination or harassment based on "race, religious

7    creed, color, national origin, ancestry, physical disability, mental disability, reproductive health

8    decisionmaking, medical condition, genetic information, marital status, sex, gender, gender

9    identity, gender expression, age, sexual orientation, or veteran or military status."  Cal. Gov't

10   Code § 12940(a), (j)(1).  In addition to the theories of race and sex discrimination that he also

11   asserts under Title VII, Block further alleges discrimination based on age, color, and ancestry in

12   his FEHA claims.  FAC ¶¶ 156, 161.  Those distinctions do not materially change the outcome.

13       For substantially the same reasons discussed above with respect to his Title VII

14   discrimination claim, Block has not alleged facts supporting a plausible inference that any adverse

15   employment action (most notably, his 2022 administrative leave) was motivated in whole or in

16   part by his membership any protected class.  His FEHA discrimination claim is therefore

17   DISMISSED with leave to amend.

18       For substantially the same reasons discussed above with respect to his Title VII harassment

19   theory, Block has not alleged harassment based on sex that either fell within the statute of

20   limitations or was "sufficiently severe or pervasive to alter the conditions of [his] employment and

21   create an abusive work environment."  *See Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th

22   264, 279 (2006) ("California courts have adopted the [Title VII] standard for hostile work

23   environment . . . harassment claims under the FEHA.").  The same is true of harassment based on

24   age: Block alleges only that two students called him "old ass mother fucker" and "old ass man."

25   FAC ¶¶ 92, 94, 100.  He has not explained how those comments—by students, rather than

26   supervisors or coworkers—were so severe or pervasive as to alter the conditions of his

27   employment.  *Cf. Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648–49 (9th Cir. 2021) (holding

28   three sexist comments by a manager and coworkers insufficiently severe and pervasive to support

United States District Court
Northern District of California

a claim, and citing authority reaching the same conclusion even with respect to more offensive harassment).  Though not entirely clear from Block's First Amended Complaint, those incidents also appear to have occurred before the 2020 COVID-19 pandemic, and thus more than three years before Block's March 31, 2023 administrative charge.  *See id.* ¶ 109 (later alleging an incident "During COVID"); ECF No. 1 at 34–35 (administrative complaint).[13]  There is no allegation that other age-based harassment occurred during the statute of limitations.

Defendants do not address Block's FEHA harassment claim to the extent that he asserts harassment based on race, ancestry, or color.  This claim may proceed on those theories, but is DISMISSED with leave to amend to the extent that it is based on sex and age.

Defendants also move to dismiss Block's "FEHA failure to prevent discrimination and failure to prevent harassment based on sex or age," ECF No. 14 at 8, though they do not address that claim separately from the underlying discrimination and harassment claims in their arguments.  FEHA's failure-to-prevent provision, Cal. Gov't Code § 12940(k), requires, among other elements, that "such discrimination or harassment actually occurred."  *See, e.g.*, *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015) (quoting *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal.App.4th 280, 289 (1998).  Accordingly, Block's failure-to-prevent claim is DISMISSED with leave to amend to the extent it rests on underlying theories of discrimination and harassment dismissed above.  If Block does not further amend his complaint, his failure-to-prevent claim shall proceed only to the extent that it is based on theories of harassment on account of race, ancestry, and color.

Defendants do not address Block's FEHA retaliation claim, which may proceed.

### C.    Defamation and Self-Publication

Defendants move to dismiss Block's claims for defamation and self-publication.  ECF No. 11 at 17–19.  Under California law, the "elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes

---

[13] Block's administrative complaint appears to allege only racial harassment and retaliation.  ECF No. 1 at 34–35.  Defendants have not moved to dismiss any claim as outside the scope of the administrative charge, and the Court declines to address that issue sua sponte.

United States District Court
Northern District of California

special damage." *Laker v. Bd. of Trs. of Cal. State Univ.*, 32 Cal. App. 5th 745, 763 (2019).

The doctrine of self-publication is an exception to the usual rule that publication of a defamatory statement must be done by the defendant. *Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 541 (2020). "For the exception to apply, the defamed party must operate under a strong compulsion to republish the defamatory statement, and the circumstances creating the compulsion must be known to the originator of the statement at the time he or she makes it to the defamed individual." *Id.* at 541–42.

Defendants argue that these claims should be dismissed for failure to identify a specific statutory basis to impose liability on a government entity. ECF No. 11 at 17 (citing *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (1986); *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 795 (1985)). Block does not address that argument. ECF No. 14 at 22–23. Section 815 of the California Government Code requires that public entities may only be held liable under state law as provided by statute, but section 815.2(a) of the Government Code makes public entities vicariously liable for their employees' conduct (within the scope of employment) to the same extent as the employees themselves, and section 820(a) provides that public employees are generally liable to the same extent as private persons. Under that statutory framework, a public entity would generally be liable for defamation by its employees within the scope of their employment. Defendants contend that California caselaw requires pleading the statutory basis for liability specifically, but state law does not govern the pleading standard in federal court. "The Federal Rules of Civil Procedure 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted' so long as the complaint includes sufficient factual allegations to support a plausible claim." *Cook v. City of Fremont*, No. 20-cv-02704-JCS, 2020 WL 6318712, at *10 (N.D. Cal. Oct. 28, 2020) (declining to dismiss a negligence claim against a government entity for failure to allege a statutory basis for liability) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 10–11 (2014)). The Court therefore declines to dismiss this claim under section 815 of the Government Code.

Defendants move to dismiss Block's defamation and self-publication claims as untimely. Again, Block ignores that argument entirely in his opposition brief. ECF No. 14 at 22–23. The

United States District Court
Northern District of California

1    statute of limitations for a defamation claim under California law is one year from publication of a

2    false statement.  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1246 (2003); Cal. Civ. Proc. Code

3    § 340(c).  Because self-publication is merely an exception to a usual limitation on defamation

4    claims, it is (if anything) a type of defamation claim, and the same limitations period applies.

5    Block filed this action on September 25, 2024.  ECF No. 1 (Notice of Removal), ¶ 1.  To the

6    extent his defamation and self-publication claims are based on statements earlier than September

7    25, 2023, they are DISMISSED as untimely.  Because it is at least conceivable that Block might

8    be able to allege some basis for tolling the statute of limitations, such dismissal is with leave to

9    amend.

10        The only statement after that date that Block identifies as purportedly defamatory is

11    Bealby's April 2024 letter "stating that the alleged wrongdoing in 2007 occurred and indicat[ing]

12    new evidence supported the finding."  FAC ¶ 149.  As Block appears to acknowledge, however,

13    statements made in the course of "a public entity's internal investigation" are protected by

14    California's "absolute litigation privilege" as part of an "official proceeding."  *Laker v. Bd. of Trs.*

15    *of Cal. State Univ.*, 32 Cal. App. 5th 745, 770, (2019); *see* ECF No. 14 at 23 (Block's opposition

16    brief, block-quoting a practice guide discussing *Laker* for this principle).  The District therefore

17    cannot be held liable under California law for Bealby's letter stating the results of the District's

18    investigation.  To the extent that Block's defamation and self-publication claims are based on that

19    letter—or any other statements in the course of the investigation—they are DISMISSED with

20    prejudice.

21        **D.    Section 1983**

22        Section 1983 provides a cause of action against any person who, under color of state law,

23    deprives another person of "rights, privileges, or immunities secured by the Constitution and laws"

24    of the United States.  42 U.S.C. § 1983.  The Supreme Court has established the doctrine of

25    qualified immunity as a defense to suit under § 1983, requiring a plaintiff to show that a

26    defendant's conduct violated a right that "was clearly established at the time of the alleged

27    misconduct."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021).  Block bases his

28    § 1983 claim against Essien on purported violations of Block's constitutional rights to due process

1    and equal protection, as well as rights under Title VII.  FAC ¶¶ 184–86.

2          As a starting point, though not addressed by the parties, "every circuit to consider this

3    exact question has held that, while a plaintiff may use § 1983 'as a vehicle for vindicating rights

4    independently conferred by the Constitution,' Title VII . . . statutory rights cannot be vindicated

5    through § 1983." *Williams v. Penn. Hum. Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017)

6    (footnotes omitted); *see also, e.g.*, *Janvier v. City of Oakland*, No. 22-cv-02330-SK, 2022 WL

7    14813900, at *5 (N.D. Cal. Oct. 25, 2022).  "Allowing pure Title VII and ADA claims under

8    § 1983 would thwart Congress's carefully crafted administrative scheme by throwing open a back

9    door to the federal courthouse when the front door is purposefully fortified" by Title VII's

10   requirement for administrative exhaustion and limitation of liability to "employers."  *Williams*,

11   870 F.3d at 299–99.  To the extent Block's § 1983 claim is based on violations of Title VII, it is

12   therefore DISMISSED with prejudice.  Because the parties did not brief this issue, however, Block

13   may file a motion for reconsideration no later than two weeks from the date of this Order if he

14   believes the Court has wrongly applied *Williams* to dismiss this aspect of his § 1983 claim.

15         That leaves Block's constitutional claims for violation of due process and equal protection.

16   Block's First Amended Complaint offers little explanation of those claims beyond his assertion

17   that "Essien acted under color of state law and the authority of state law to repeatedly violate

18   [Block's] federal constitutional rights to equal protection and due process of the law."  FAC ¶ 184.

19         "In order to state a [procedural due process] claim under the fourteenth amendment, the

20   complainant must allege facts showing not only that the State has deprived him of a liberty or

21   property interest but also that the State has done so without due process of law."  *Gearhart v.*

22   *Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985).  "[O]nce a court determines that a protected property

23   interest has been taken, 'the question remains what process is due,'" which "is more easily asked

24   than answered."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th

25   Cir. 1998) (citation omitted).

26         The Fourteenth Amendment also protects certain interests in substantive due process, but

27   "most courts have rejected the claim that substantive due process protects the right to a particular

28   public employment position."  *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 996–97 (9th Cir.

2007), *aff'd*, 553 U.S. 591 (2008).  Even if such a right might exist, Essien would therefore "be shielded from such [a] claim[] by the doctrine of qualified immunity . . . because the conduct alleged would not violate a 'clearly established' constitutional right."  *Garrett v. Governing Bd. of Oakland Unified Sch. Dist.*, 583 F. Supp. 3d 1267, 1280 (N.D. Cal. 2022).  Substantive due process may protect a public employee from a "government blacklist" or similar action that wholly prevents them from pursuing their chosen *profession*, as opposed to merely a specific job.  *Engquist*, 478 F.3d at 997–98.  Notwithstanding Block's conclusory assertion in his opposition brief that he "has been effectively 'blacklisted,'" ECF No. 14 at 24, no allegations in the First Amended Complaint indicate that Essien prevented Block from working as a security guard for other employers.

"The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose."  *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).  Such a claim may be based on discrimination against a protected class.  *See id.*  In some contexts, it may also be based on a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Both parties devote arguments to that theory.  ECF No. 11 at 22–23 (citing *Vill. of Willowbrook*, 528 U.S. 562); ECF No. 14 at 24 (citing *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)).  Both overlook that the Supreme Court has squarely held "that the class-of-one theory of equal protection *does not apply* in the public employment context."  *Engquist*, 553 U.S. 591 at 598 (emphasis added).

Block asserts his § 1983 claim only against Essien.  FAC ¶¶ 180–87.  "Liability under section 1983 arises only upon a showing of personal participation by the defendant."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  In his opposition brief, Block cites his placement on administrative leave and his instruction to stay away from MLK Middle School as supporting his constitutional claims.  ECF No. 14 at 24.  But Block alleged that Phung placed him on leave and instructed him to stay away—not Essien.  FAC ¶ 140.  He also refers vaguely to a lack of support from Essien, purported retaliation, an alleged admission that Block "was not being treated right,"

and Essien's failure to address Block's complaints sufficiently, but does not meaningful connect those allegations to the constitutional frameworks of due process or equal protection.  ECF No. 14 at 24.  It is thus not clear from either the First Amended Complaint or Block's opposition brief what *conduct by Essien* purportedly violated Block's *rights to equal protection or due process*, much less any such conduct that violated clearly established law.[14]

Block's § 1983 claim is therefore DISMISSED with leave to amend, except that Block may not amend this claim to reassert a § 1983 claim based on violations of Title VII.

### E.    Motion to Strike Factual Allegations

Defendants move to strike paragraphs 21 through 48, 50 through 56, 98, and 120 through 122 of the First Amended Complaint as irrelevant.  According to Defendants, many of those allegations describe events falling outside the statute of limitations and lack a sufficient connection to any timely claim to be relevant under a theory of continuing violation.  ECF No. 11 at 24–26; ECF No. 18 at 12–13.  Defendants concede, however, that some older allegations, such as those regarding accusations of misconduct in 2007, are sufficiently related to subsequent events not to warrant a motion to strike.  ECF No. 11 at 25 n.6.  Block argues that the "litany of employment abuses he has suffered going back to 2007 . . . are all fair game because they are part of a continuing violation."  ECF No. 14 at 25.

The only federal case Defendants cite for striking allegations predating a statute of limitations involved different circumstances from the case at hand.  *See* ECF No. 11 at 24 (citing *McCauley v. Stanford Univ. Med. Ctr.*, No. C07-01784 JF (HRL), 2007 WL 2070326 (N.D. Cal. July 17, 2007)); *cf. id.* at 25; ECF No. 18 at 12–13 (citing only California appellate authority addressing the scope of the continuing violation doctrine).  In that case, the court determined that the plaintiff's judicial complaint was untimely with respect to her first administrative charge, which included the conduct at issue.  *McCauley*, 2007 WL 2070326, at *2.  The scope of the

---

[14] If Block amends to pursue this claim, he should also be prepared to address whether the conduct at issue falls within the applicable two-year statute of limitations, an issue not briefed by either party on the present Motion.  *See, e.g.*, *Pumphrey v. Battles*, No. 21-cv-09005-JSC, 2023 WL 1769185, at *1 (N.D. Cal. Feb. 3, 2023) (citing *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014)) (discussing the applicable statute of limitations for a § 1983 claim, as borrowed from California law).

United States District Court
Northern District of California

plaintiff's civil action was therefore limited to a second administrative charge, which "specifically indicated in the designated box that the earliest date of discrimination was May 12, 2004" and did not encompass a theory of "continuing action." *Id.* at *3. The court therefore struck allegations predating that date. *Id.*

*McCauley* indicates that a motion to strike may be appropriate where it is legally impossible for a plaintiff to rely on allegations of conduct preceding a particular date. It does not stand for a rule that allegations predating a statute of limitations should be stricken unless a plaintiff alleges facts demonstrating conclusively their relevance. That said, where a plaintiff fails to identify even potential relevance of an allegation, a court can reasonably conclude that it is "immaterial" or "impertinent." *See* Fed. R. Civ. P. 12(f).

As discussed above, Defendants have not moved to dismiss Block's claims for retaliation and for harassment based on race, ancestry, and color under Title VII and FEHA. Allegations that Block reported discrimination (even outside the statute of limitations) may be relevant to his claims that he later faced retaliation, and allegations that he experienced harassment based on race (even outside the statute of limitations) may be relevant to his harassment claims under a continuing violation theory. That is not to say that all such allegations will ultimately prove relevant, that they could support viable claims in themselves, or that Block has alleged sufficient connections between them and his timely claims to render them actionable despite the statute of limitations. This Order should not be construed as resolving the substantive scope of the continuing violation doctrine. But taking into account the general "disfavor" towards motions to strike and "the limited importance of pleading in federal practice," the Court declines to strike allegations that overtly relate to the topics of racial harassment and reports of discrimination, which Block might (or might not) ultimately be able to connect to his surviving claims at a later stage of the case. *See Mag Instrument*, 595 F. Supp. 2d at 1106.

Applying those principles, Defendants' Motion to Strike is DENIED as to paragraphs 41 through 48 of the First Amended Complaint, which relate to an alleged incident and report of racial harassment. The Motion is GRANTED as to paragraphs 21 through 40, 50 through 56, 98, and 120 through 122, which are hereby stricken. Those paragraphs do not overtly allege protected

conduct for the purpose of Block's retaliation claims or harassment based on race, and Block's opposition brief does not specifically explain their relevance. *See* ECF No. 14 at 25–26. This Order is without prejudice to Block reasserting the stricken allegations in an amended complaint if he can allege a connection between them and any timely claim. If Block does not amend, however, Defendants need not respond to the stricken allegations in their answer.

### F.    Motion to Strike Prayers for Relief

The remainder of Defendants' Motion to Strike targets two of the remedies sought in Block's Complaint: punitive damages and injunctive relief. ECF No. 11 at 26–28. Though not addressed by any party here,[15] this Court has previously summarily denied a motion to strike particular remedies in *Well v. County of Alameda*—there, attorneys' fees and injunctive relief. *Well*, No. 25-cv-01894-LJC, 2025 WL 1223553. (N.D. Cal. Apr. 28, 2025). The Court relied primarily on the Ninth Circuit's holding in *Whittlestone* "that Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *Whittlestone*, 618 F.3d at 976.

*Whittlestone* addressed a motion to strike a plaintiff's request for lost profits and consequential damages as precluded by law. *Id.* at 973. The Ninth Circuit compared such relief to the categories specified in Rule 12(f), and determined Plaintiffs requests for remedies were not "insufficient defenses," "redundant," "immaterial," "impertinent," or "scandalous," even if they might be precluded by law. *Id.* at 974. The Ninth Circuit also noted that the standard for review on appeal differs between motions to strike (which are reviewed for abuse of discretion) and motions to dismiss (which are reviewed de novo), suggesting that motions to strike are not properly directed to substantively limit a plaintiff's claims. *Id.* The Ninth Circuit therefore reversed the district court's order granting the motion to strike without reaching the question of whether the remedies at issue were available to the plaintiff—except in a footnote discussing the outcome "[e]ven if [the panel] were to examine the district court's actions under Rule 12(b)(6)." *See id.* at 975 n.2. *Whittlestone* therefore bars Defendants' Motion to Strike Block's requests for

---

[15] The Court notes that Defendants in this case are represented by the same law firm as the defendant in *Well*, though not by the same specific attorneys.

United States District Court
Northern District of California

remedies.

Even if that were not so, questions of whether Essien's conduct might support punitive damages, or whether any form of injunctive relief is warranted, "raise issues better addressed at a later stage of the case." *Well*, 2025 WL 1223553, at *1 (noting that, like here, the defendant's "arguments regarding injunctive relief involve[d] questions of the potential for irreparable injury, the sufficiency of money damages, and the 'proper balance between state and federal authorities,' which are difficult to evaluate at the beginning of a case and without a factual record" (citation omitted)). The Court notes the parties' agreement that Block cannot recover punitive damages against the District, but does not discern any practical value that would result from memorializing that agreement by striking any portion of the First Amended Complaint. Accordingly, even if Ninth Circuit precedent did not *require* the Court to deny Defendants' Motion to Strike with respect to particular remedies, the Court would reach the same result as a matter of discretion.

"To be clear, the Court does *not* hold that [Block] can or will recover any [punitive damages] or obtain any injunctive relief. The Court holds only that [Defendants have] not met [their] burden to show that those requests should be stricken under Rule 12(f) at this early stage of the case." *See Well*, 2025 WL 1223553, at *2.

## V.     CONCLUSION

For the reasons discussed above, Defendants' Motion is GRANTED in part and DENIED in part. Defendants did not move to dismiss Block's claims for retaliation and for harassment based on race, ancestry, and color under Title VII and FEHA, so those claims shall proceed. Block's failure-to-prevent-harassment claim under FEHA may shall also proceed to the extent that it rests on harassment based on race, ancestry, or color. All other claims are DISMISSED. Such dismissal is with leave to amend, except that: (1) Block cannot pursue a defamation or self-publication claim based on Stephanie Bealby's 2024 letter or any other statements made in the course of the District's internal investigation; and (2) Block cannot pursue a § 1983 claim based on violations of Title VII, unless he first seeks and obtains reconsideration of the relevant portion of this Order.

Paragraphs 21 through 40, 50 through 56, 98, and 120 through 122 of the First Amended

United States District Court
Northern District of California

Complaint are STRICKEN as immaterial and impertinent, with leave to amend.

If Block wishes to pursue any of the dismissed claims or stricken allegations, he may file a second amended complaint no later than January 20, 2026.

A further case management conference shall occur by videoconference on February 26, 2026 at 1:30 PM.  The parties shall file an updated joint case management statement no later than February 19, 2026.

**IT IS SO ORDERED.**

Dated: December 29, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California